IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID HOHMAN, et al., | : | |
|     Plaintiffs | : | No. 1:17-cv-01461 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| MAYOR AND | : | |
| CITY COUNSEL OF | : | |
| OF BALTIMORE, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

Before the Court are Defendants Mayor and City Counsel of Baltimore ("City"), and Baltimore City Police Department's ("BPD") motions to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. (Doc. Nos. 10, 11.) For the reasons that follow, the Court will grant both motions.

## I. BACKGROUND[1]

Plaintiffs David and Ashley Hohman ("Plaintiffs"), initiated the above-captioned action by filing a complaint against the City, the BPD, BPD Commissioner Anthony W. Batts ("Batts"),[2] and former BPD Officer John E. Torres ("Torres"),[3] in the York County Court of Common Pleas on July 13, 2017. (Doc. No. 1) Plaintiffs, husband and wife, brought this action as a result of an alleged altercation between Torres and David Hohman in York Township,

---

[1] The relevant facts are taken from Plaintiff's complaint, which is attached as an exhibit to the notice of removal. (Doc. No. 1, Ex. A.) The Court limits its discussion of the factual background of this case only to those factual allegations relevant for purposes of deciding the motions presently before the Court.

[2] Although the complaint names Batts as a Defendant in his official capacity as the Commissioner of BPD, as BPD notes in its motion to dismiss, suits against state officials in their official capacities are to be considered suits against the state. (Doc. No. 11 at 1 n.1). Thus, the Court will not consider Batts as a separate Defendant but will instead consider him as part of the BPD, who moves to dismiss Plaintiff's complaint.

[3] "Torres is currently incarcerated in the Pennsylvania State Correctional Institution at Camp Hill . . . [in] Camp Hill, Pennsylvania." (Doc. No. 1, Ex. A at ¶ 5.)

1

Pennsylvania on April 29, 2014. (Id., Ex. A at ¶ 25.) Plaintiffs claim that Torres, who was then employed as a BPD officer but resided in York County, Pennsylvania, assaulted David Hohman by discharging a firearm "fourteen (14) times directly towards David Hohman, striking Hohman's body six (6) times, including his leg and chest." (Id. at ¶ 42.)

The alleged incident occurred when David Hohman traveled from his home in Baltimore, Maryland to York Township, Pennsylvania "to speak with Torres about Torres' continued apparent relationship with Hohman's wife . . . [Ashley] Hohman." (Id. at ¶ 25.) Plaintiffs aver that Torres "was dressed in his full [BPD] uniform, carrying his duty weapon, a 9mm Glock semi-automatic firearm, and was en-route to a court appearance as part of his employment with [BPD]" when the encounter with Hohman occurred.[4] (Id. at ¶¶ 27-32.) Further, "[i]mmediately after shooting David Hohman, rather [than] calling 911 to request aid, Torres called his then [BPD] supervisor . . . to advise [his supervisor] that he was involved in a shooting incident." (Id. at ¶ 44.)

Plaintiffs allege that the City and Police Department Defendants bear responsibility for any injuries inflicted by Torres toward Hohman. Specifically, they claim that "Torres' decision to report this use of deadly force to his . . . supervisor was in accordance with [BPD] policy," and that Hohman's injuries are a direct result of Defendants' "failure to properly train and supervise Torres." (Id. at ¶¶ 45, 47-48.) Plaintiffs' complaint sets forth seven counts, including state law claims for battery and intentional infliction of emotional distress against Torres individually, claims for constitutional violations against Torres individually as well as all remaining

---

[4] Plaintiffs specifically aver that Torres used a BPD-issued weapon to assault Hohman. (Id. at ¶ 42.)

2

Defendants,[5] claims against the remaining Defendants for negligent hiring, retention, and supervision, a claim against the remaining Defendants under the theory of respondeat superior, and a claim for loss of consortium brought only by Ashley Hohman against all Defendants. (Id. at 9-17.)

On August 16, 2017, BPD filed a notice of removal, to which all other Defendants consented, removing the above-captioned action to this Court. (Id.) The City and BPD each filed motions to dismiss pursuant to Rule 12(b)(2) (Doc. Nos. 10, 11), which have been fully briefed and are now ripe for disposition.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. Pro. 12(b)(2). Once "the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). At the pleading stage, a plaintiff is required only to establish a prima facie case of personal jurisdiction over the defendant, and the court must accept the plaintiff's allegations as true and construe disputed facts in the plaintiff's favor. See Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009); Carteret Sav. Bank, 954 F.2d at 146. Further, a court may consider the parties' affidavits and other evidence when making determinations regarding personal jurisdiction. See Metcalfe, 566 F.3d at 330; Connell v. CIMC Intermodal Equip., No. 1:16-CV-714, 2016 WL 7034407, at *1 (M.D. Pa. Dec. 2, 2016).

---

[5] Count III asserts a municipal liability claim against both Torres individually and all Defendants together, and Count IV asserts a supervisory liability claim against all remaining Defendants. (Id. at 11-13.)

## III. DISCUSSION

### A. Legal Standard Applicable to Determining Whether a Court May Exercise Personal Jurisdiction over a Defendant

"A federal court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of the state." Carteret Sav. Bank, 954 F.2d at 144-45 (quoting Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987)). Pennsylvania's long-arm statute permits the Court to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). Therefore, in its exercise of personal jurisdiction, this Court is constrained only by the Due Process Clause of the United States Constitution, which requires that a defendant "have certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945). Requiring "minimum contacts" between the defendant and the forum state provides "fair warning" to a defendant that he or she may be called to defend a lawsuit in that state. See Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007).

Two forms of personal jurisdiction conform to these notions of due process. General jurisdiction exists when a defendant has such "systematic and continuous contacts" with the forum state that jurisdiction over the defendant is warranted. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 415 (1984); Marten, 499 F.3d at 296. Specific jurisdiction exists when the claims arise out of or relate to activities that the defendant "purposefully directed" at the forum state. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); Helicopteros, 466 U.S. at 414; Marten, 499 F.3d at 296. To determine whether specific jurisdiction exists, a court must consider: (1) whether the defendant "purposefully directed" activities at the forum state and (2) whether the plaintiff's claims arise out of or relate to those

activities. Marten, 499 F.3d at 296. If these two factors are met, a court may determine whether exercising personal jurisdiction over the defendant "otherwise 'comport[s] with fair play and substantial justice.'" Id. (alteration in original) (quoting Burger King, 471 U.S. at 476).

**B.      Whether the Court May Exercise Personal Jurisdiction over the City**

The plaintiff bears the burden of proving that the Court may properly exercise personal jurisdiction under either the general or specific jurisdiction theory. Mellon Bank (East) PSFS Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (citing Carteret, 954 F.2d at 146) ("When a defendant raises the defense of [a] court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper."). In the instant case, Plaintiffs argue that this Court has personal jurisdiction over the City because the City has "long sought the services and products offered by, and have executed multiple written agreements with, businesses located in the Middle District of Pennsylvania," and that "[t]hese engagements demonstrate substantial contacts [from the City] in . . . Pennsylvania."[6] (Doc. No. 13 at 6.) Plaintiffs also assert that the City "regularly utilize[s]" products and services from entities in Pennsylvania, "both within and outside of the Middle District," including an animal diagnostic laboratory in Chester County, the Milton S. Hershey Medical Center in Dauphin County, and a company providing "production and installation of water meters, water pipes, and fire hydrants" located in Snyder County. (Id. at 10-11.) According to Plaintiffs, if the City defaulted on any of its payment obligations under the aforementioned contractual

---

[6] Plaintiffs maintain that "[t]hrough business and purchasing activities," the City has shown "continuous and substantial attachment to Pennsylvania, specifically the mid-state located within the Middle District." (Id. at 8.) Plaintiffs point to an affidavit to show that the City has "regularly executed contracts with at least three (3) businesses existing within the Middle District," including Penn Credit Corporation, located in Dauphin County, Pennsylvania, "for collection of delinquent parking fines issued in the City of Baltimore," Atlantic Tactical, Inc., in York County, Pennsylvania, "for the supply of ammunition to the [BPD]," and the services of Atlantic Tactical "to supply the [BPD] with police duty gear." (Id. at 8-10.)

5

relationships, it is "foreseeable that [the City] could have been subjected to collection actions . . . in the Middle District." (Id. at 11.) Lastly, Plaintiffs argue that the City possessed sufficient control over Torres so as to render it subject to personal jurisdiction in this Court in connection with the altercation involving David Hohman.[7]

The City maintains that Plaintiffs' arguments as to personal jurisdiction are meritless. Specifically, it argues that Plaintiffs' emphasis on the City's contractual relationships with businesses in Pennsylvania is unfounded because "the City does not sufficiently control the BPD or the Baltimore police officers and cannot be held liable for their conduct," and it is not foreseeable that the City may face litigation in Pennsylvania due to a dispute arising from one of its contracts referred to by Plaintiffs. (Doc. No. 17 at 2, 5.) Instead, the City contends, these agreements provide "that the contract be governed by and construed under Maryland law and that Maryland law apply to any dispute between the parties and requiring any lawsuit based on the contract to be filed in a court of competent jurisdiction in Baltimore City." (Id.) Additionally, the City argues that because "Plaintiffs have not demonstrated that [it] 'purposefully directed' its activities at Pennsylvania or that their claims 'arise out of or relate to'

---

[7] Plaintiffs assert that the weapon and ammunition used by Torres to harm Hohman were issued by the BPD, and the City often purchases various items, such as "utility belts, cases, [and] holsters" for Baltimore police offers like Torres. (Id. at 13.) Additionally, Plaintiffs state that an agency relationship between the City and the BPD exists as a result of a contract under which the City is obligated to provide legal counsel to and indemnify police officers in certain litigation. (Id. at 14.) Further, Plaintiffs state that "it is clear that the City does play a role in the implementation of policy related to the [BPD] and that it exerts sufficient influence and control over the policies governing officers," pointing to a January 12, 2017 consent decree into which City representatives entered as a result of previous litigation and in which the City allegedly agreed to begin the process of reforming certain police practices. (Id. at 15.)

6

the agreements Plaintiffs contend establish jurisdiction . . . this Court need not consider whether exercising jurisdiction over the City comports with fair play and substantial justice."[8] (Id. at 6.)

The Court concludes that it lacks personal jurisdiction over the City. While Plaintiffs point to contractual relationships with entities located in Pennsylvania and Torres's use of police equipment while he was present in Pennsylvania, such connections are insufficient to establish the minimum contacts required under the Due Process Clause in order for this Court to exercise personal jurisdiction over the City. See Burger King, 471 U.S. at 474. Even assuming that the City's contracts with Pennsylvania businesses anticipated potential litigation of contract disputes within the state or that the City played a direct role in furnishing the equipment used by Torres, Plaintiffs have not met their burden of showing that the City anticipated that the conduct allegedly engaged in by Torres would occur in Pennsylvania. Because of the tenuous relationship between the City and the conduct allegedly committed by Torres in Pennsylvania, the Court concludes that Plaintiffs' claim does not "arise out of or relate to" any of the City's activities pertaining to Pennsylvania. See Malik v. Cabot Oil & Gas Corp., No. 16-2829, 2017 WL 4260816, at *3 (3d Cir. Sept. 26, 2017) (citing Burger King, 471 U.S. at 472). Accordingly, the Court will grant the City's motion to dismiss pursuant to Rule 12(b)(2). (Doc. No. 10).[9]

---

[8] The City also maintains that it is not subject to general jurisdiction in Pennsylvania in this action, stating that "[j]ust as the City's agreements with three entities existing within the Middle District do not . . . [warrant] specific jurisdiction, they do not meet the much higher threshold for general jurisdiction," and that even if the Court were to engage in such an analysis, exercising jurisdiction over the City would be neither fair nor just because "the City does not and did not employ Torres," as "[t]he contacts the City has with entities located in Pennsylvania are completely unrelated to the alleged conduct that is the subject of Plaintiffs' claims." (Doc. No. 17 at 6-7.)

[9] The Court notes that the City has also moved, in the alternative, to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. However, because the Court concludes that it lacks personal jurisdiction over the City and will therefore grant the City's motion under Rule 12(b)(2), the Court declines to address the City's argument for dismissal under Rule 12(b)(6).

### C. Whether the Court May Exercise Personal Jurisdiction over BPD

Plaintiffs similarly assert that personal jurisdiction over BPD is proper. Plaintiffs point to BPD's use of "services and products offered by, . . . [and] agreements with, businesses located in the Middle District of Pennsylvania," and practice of "repeatedly engag[ing] in recruiting efforts in Pennsylvania." (Doc. No. 15 at 4.) Specifically, Plaintiffs reference contractual agreements between Atlantic Tactical, Inc., and "BPD's funding source, the Mayor and City Council of Baltimore," pertaining to the supply of various items used by law enforcement, including "duty belts, firearm holsters, cases, and scabbards." (Id. at 7.) Like they asserted with respect to the exercise of jurisdiction over the City, Plaintiffs state that it is foreseeable for BPD to anticipate litigating a contract dispute in Pennsylvania. (Id. at 8.) Plaintiffs further assert that "BPD regularly conducts employment . . . within the Commonwealth of Pennsylvania, specifically the recruitment and hiring of new police officers."[10] (Id.) Plaintiffs also maintain that "[t]he action[s] of Defendant Torres, who was an employee/agent of BPD on April 29, 2014, using the firearm, ammunition and training provided by BPD, subject[ed] BPD to the specific jurisdiction of this [C]ourt." (Id. at 9.) According to Plaintiffs, such inaction on the part of BPD warrants the exercise of personal jurisdiction in this case because the "inactions [as to] adequately training and supervising its agent/employee, Defendant Torres, directly led to the actions taken by Torres [toward Hohman]."[11]

---

[10] To support this contention, Plaintiffs claim that BPD administered a "civil service examination and physical agility test . . . on the campus of Indiana University of Pennsylvania" in May of 2013 and attended a law enforcement career job fair in Pittsburgh, Pennsylvania in March of 2016. (Doc. No. 15 at 8.)

[11] The Court construes this allegation to mean that any inaction or negligence on the part of BPD with respect to its oversight and/or training of Torres led to the harmful conduct allegedly committed by Torres toward David Hohman that gave rise to the instant action. In a similar vein, Plaintiffs also argue that jurisdiction exists over BPD due to "the acts of BPD's employee/agent, Defendant Officer Torres," pointing to Torres's testimony regarding his employment with BPD, firearms training that occurred as part of such employment, and the fact

In contrast, BPD maintains that is subject to neither general nor specific jurisdiction in Pennsylvania. (Doc. Nos. 12, 20.) First, it argues that general jurisdiction in Pennsylvania is improper because BPD "has no meaningful contacts with Pennsylvania," as it was authorized by the Maryland legislature as an agency of the state of Maryland, its jurisdiction "does not include any territory within . . . Pennsylvania," and it "does not conduct any of its functions in Pennsylvania." (Doc. No. 12 at 6-7.) Second, BPD claims that it is not subject to specific jurisdiction in Pennsylvania because a consideration of the applicable factors renders specific jurisdiction improper. (Id. at 7.) BPD argues that, under the relevant analysis, it has not purposefully directed its activities toward Pennsylvania and Plaintiffs' claims against it "cannot arise out of BPD activities in Pennsylvania," and that the exercise of jurisdiction would contradict notions of fair play and substantial justice because any claim against BPD overwhelmingly concerns policies and issues related to Maryland, rather than those implicating Pennsylvania. (Id. at 8-10.)

The Court agrees with BPD that the exercise of personal jurisdiction by the Court, either in the form of general or specific jurisdiction, would be improper. Plaintiffs have failed to show that the BPD has purposefully directed its activities toward Pennsylvania with respect to Officer Torres's conduct. While Torres resided in Pennsylvania, his actions toward David Hohman were independent of any training or supervision of the BPD in that Torres allegedly assaulted Hohman due to an altercation stemming from events that do not involve Torres's employment as a BPD police officer. Moreover, although Plaintiffs argue that certain contractual agreements and attendance at police department-related events in Pennsylvania renders the exercise of jurisdiction proper, such connections are insufficient to establish the requisite contacts for

---

that Torres was "on his way to testify in court for BPD when the shooting of, and injuries to, Hohman occurred." (Id. at 11-13.)

exercising specific jurisdiction, let alone general jurisdiction, over BPD in Pennsylvania. In conclusion, Plaintiffs fail to meet their burden in showing a prima facie case of personal jurisdiction over BPD, as they have not demonstrated such continuous and systematic contacts to establish general jurisdiction, nor have they shown that BPD directed any activity toward the Commonwealth of Pennsylvania with respect to the incident between Torres and David Hohman that gave rise to this litigation. Accordingly, as the Court finds that it lacks personal jurisdiction over BPD, it will grant BPD's motion to dismiss.

## IV. CONCLUSION

For the reasons stated above, the Court will grant both motions to dismiss. (Doc. Nos. 10, 11.) An appropriate Order follows.